UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

STARLA JEAN LLOYD,                    :
                                      :
      Plaintiff,                      :
                                      :
v.                                    :        No. 4:14cv107
                                      :
CITY OF NEWPORT NEWS, VIRGINIA[1]  :
GABE MORGAN, Sherriff for the        :
City of Newport News,                :
and                                   :
JANE DOE,                             :
Deputy Sheriff for the City of       :
Newport News,                         :
                                      :
      Defendants.                     :

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

     This matter is before the Court on Defendant, Gabe Morgan

("Morgan")'s Motion to Dismiss for failure to state a claim (ECF

No. 10), pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure.   The District Court referred the motion to the

undersigned United States Magistrate Judge for recommended

disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(b)

of the Federal Rules of Civil Procedure.   For the reasons set

forth below, the undersigned recommends that Morgan's motion be

GRANTED IN PART and DENIED IN PART.

---

[1] Lloyd originally named the City of Newport News as a defendant.
However, the Court granted the City's unopposed motion to dismiss, and
the City is no longer a party to the case. See Order (ECF No. 21).

1

## I. STATEMENT OF THE CASE

Plaintiff, Starla Jean Lloyd ("Lloyd") filed the Complaint August 22, 2014 and named as defendants the City of Newport News, Virginia, Sheriff Gabe Morgan, individually and in his official capacity, and Jane Doe, an unidentified Deputy Sheriff for the City.  Lloyd alleges state law tort claims, violations of the United States Constitution, and violations of the Virginia Constitution.

She alleges that on or about August 19, 2011, Jane Doe and another unknown sheriff's deputy escorted Lloyd from the Newport News Juvenile and Domestic Relations Court back to the Newport News Juvenile Secure Detention facility for processing and release from custody.  Compl. ¶ 8 (ECF No. 1, at 3).  Lloyd alleges that while descending the courthouse stairs, in handcuffs secured behind her back and with shackles around her ankles, she "lost her footing and fell down the flight of steps striking her head and body with great force and violence, due to the negligent supervision and lack of assistance by the Newport News Sheriff's Deputies."  Id.  Lloyd alleges that Jane Doe and the other deputy did not assist Lloyd down the stairs, but walked approximately five steps behind Lloyd.  Id.

Lloyd alleges that Jane Doe then accompanied Lloyd to the emergency room at Riverside Regional Medical Center.  Lloyd alleges that an attending physician there "ordered specific

tests be conducted." Id. ¶ 10 (ECF No. 1, at 4). However, "Defendant Jane Doe, negligently and with deliberate indifference, and without a valid reason, other than to state she had a dinner date, cancelled the tests and returned the Plaintiff to the Detention Center." Id. Lloyd alleges that after her release from custody, she sought medical attention at Mary Immaculate Hospital "where it was determined that she had suffered serious head and bodily injuries from her fall and that she required additional treatment for her injuries, which treatment had been previously negligently denied to her by Defendant Deputy Jane Doe." Id. ¶ 11 (ECF No. 1, at 4).

Lloyd alleges that Jane Doe breached her duty to exercise reasonable care for Lloyd while Lloyd was in custody. Id. ¶¶ 10, 13 (ECF No. 1, at 4). Lloyd further alleges that Morgan is liable for such common law negligence under the principle of respondeat superior. Id. ¶ 14 (ECF No. 1, at 5). Lloyd alleges that the deliberate indifference exhibited by Jane Doe's conduct rose to the level of gross negligence. Id. ¶¶ 20, 24 (ECF No. 1, at 5-6).

Lloyd alleges that by the same conduct, Defendants collectively acted under color of state law to deprive her of her Eighth Amendment right to be free from cruel and unusual punishment, id. ¶ 21, her right to due process of law secured by the Fourteenth Amendment, id. ¶¶ 21, 24, and her privileges and

3

immunities secured by Article IV and/or the Fourteenth Amendment to the United States Constitution.[2] Id. ¶ 24 (ECF No. 1, at 5-6). Lloyd also alleges that Defendants acted to deprive Lloyd of her rights secured by Sections 9 and 11 of the Virginia Constitution. Id. ¶ 21 (ECF No. 1, at 5). Lloyd seeks $5,000,000 in compensatory damages in addition to $350,000 in punitive damages. Id. ¶¶ 25, 26 (ECF No. 1, at 6).

Morgan moved to dismiss the Complaint for failure to state a claim upon which relief can be granted and requested oral argument for same. (ECF No. 10). Plaintiff filed a brief opposing Morgan's motion to dismiss. (ECF No. 17). Morgan replied (ECF No. 18), and the undersigned heard argument of counsel February 11, 2015.

## II. RECOMMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. The Rule 12(b)(6) Standard

A Rule 12(b)(6) motion "challenges the legal sufficiency of a complaint considered with the assumption that the facts alleged are true." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (internal citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678

---

[2] Lloyd did not specifically allege which privileges and immunities, secured by multiple provisions of the United States Constitution, the sheriff's department allegedly deprived her of.

(2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). While federal courts adhere to notice pleading, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Id.</u> Notably, the motion to dismiss inquiry is "context-specific." <u>Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.</u>, 591 F.3d 250, 256 (4th Cir. 2009). At bottom, the complaint must "plead sufficient facts to allow a court, drawing on 'judicial experience and common sense,' to infer 'more than the mere possibility of misconduct' and 'nudge the plaintiff's claims across the line from conceivable to plausible.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 570)).

## B. Lloyd's Claims Against Morgan

### 1. Lloyd's Official Capacity Claims Against Morgan

Lloyd has named Morgan as a defendant in both his official capacity as the sheriff for Newport News and his individual capacity. Morgan has moved to dismiss the former claims on the ground that the Eleventh Amendment bars Lloyd's claims. Morgan's Br. (ECF No. 11, at 3-4). Lloyd has opposed the motion, with regard to the official capacity claims, solely on the assertion that "the Eleventh Amendment simply does not apply in this case." Pl.'s Br. (ECF No. 17, at 2).

"It is well established that the Eleventh Amendment bars suit in federal court by an individual citizen against a

sovereign state of the Union."[3]  Roach v. W. Virginia Reg'l Jail

& Corr. Facility Auth., 74 F.3d 46, 48 (4th Cir. 1996) (citing

Edelman v. Jordan, 415 U.S. 651, 662-63 (1974); Hans v.

Louisiana, 134 U.S. 1, 16-17 (1890)).  As Morgan points out and

numerous courts have recognized, considerable authority holds

"that the Eleventh Amendment precludes § 1983 official-capacity

suits against Virginia Sheriffs and their deputies because they

are state, not local, officials."  Gemaehlich v. Johnson, No.

7:12cv263, 2013 WL 589234, at *4 (W.D. Va. Feb. 14, 2013) aff'd,

No. 14-1198, 2014 WL 6764332 (4th Cir. Dec. 2, 2014) (citing

---

[3]     It is not well established, however, whether a defendant properly
asserts Eleventh Amendment immunity through a Rule 12(b)(1) motion to
dismiss for lack of subject matter jurisdiction or a Rule 12(b)(6)
motion to dismiss for failure to state a claim upon which relief can
be granted.  E.g., Pele v. Pennsylvania Higher Educ. Assistance
Agency, 13 F. Supp. 3d 518, 521 (E.D. Va. 2014) ("The Fourth Circuit
has not specifically ruled on this question."); Andrews v. Daw, 201
F.3d 521, 526 n.2 (4th Cir. 2000) ("Our cases have been unclear on
whether a dismissal on Eleventh Amendment immunity grounds is a
dismissal for failure to state a claim under Rule 12(b)(6) or a
dismissal for lack of subject matter jurisdiction under Rule
12(b)(1)." (comparing cases)).  "Although not a true limit on the
subject-matter jurisdiction of the federal courts, the Eleventh
Amendment is 'a block on the exercise of that jurisdiction.'"  Roach,
74 F.3d at 48 (quoting Biggs v. Meadows, 66 F.3d 56, 60 (4th Cir.
1995)).  Indeed, the Amendment itself speaks in terms of "the Judicial
power of the United States."  U.S. Const. amt. XI.
        Nevertheless, the Fourth Circuit has addressed the argument on
12(b)(6) motions, and this report will do the same.  See, e.g., Biggs
v. Meadows, 66 F.3d 56, 58-59 (4th Cir. 1995).  Although there is room
for argument with respect to burden shifting, the distinction can be,
as here, mostly irrelevant because "[w]hen the defendant makes a
facial challenge to subject matter jurisdiction under Rule 12(b)(1),
the plaintiff is afforded "the same procedural protection as he would
receive under a Rule 12(b)(6) consideration," such that "the facts
alleged in the complaint are assumed to be true."  Haley v. Virginia
Dep't of Health, No. 4:12CV16, 2012 WL 5494306, at *2 (W.D. Va. Nov.
13, 2012) (citing Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)).

Smith v. McCarthy, 349 F. App'x 851, 858 n.11 (4th Cir. 2009) ("[T]he district court did not err in dismissing the [plaintiffs'] claims against [the deputy sheriffs] in their official capacities, as they are afforded immunity by the Eleventh Amendment."); Bland v. Roberts, 730 F.3d 368, 391 (4th Cir. 2013) (citing Cash v. Granville Cnty. Bd. of Educ., 242 F.3d 219, 223 (4th Cir. 2001) ("[T]o the extent that the claims seek monetary relief against the [Virginia] Sheriff in his official capacity, . . . the Sheriff is entitled to Eleventh Amendment immunity."); Vollette v. Watson, 937 F. Supp. 2d 706, 714-15 (E.D. Va. 2013) (compiling cases); Francis v. Woody, No. 3:09cv235, 2009 WL 1442015, at *4 (E.D. Va. May 22, 2009) (same).

Here, Lloyd has named Sheriff Morgan as a defendant in his official capacity.  As such, unless an exception applies, Morgan is entitled to Eleventh Amendment immunity as an "arm of the State" of Virginia.  Kitchen v. Upshaw, 286 F.3d 179, 184 (4th Cir. 2002).  Because none of the three recognized exceptions to immunity apply in this case, and in light of the significant authority cited above and Lloyd's failure to provide any argument or case law to the contrary, the undersigned recommends that the Court GRANT Morgan's motion with respect to Lloyd's claims for damages against Morgan in his official capacity and that those claims be DISMISSED.

First, Congress can abrogate a state's Eleventh Amendment immunity "when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority." Bd. of Trustees of Univ. of Alabama v. Garrett, 531 U.S. 356, 363 (2001) (citations and internal quotations omitted). Plaintiff has not alleged or argued any abrogation and § 1983 did nothing to abrogate the States' sovereign immunity. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 66-67 (1989).

Second, States can waive their immunity. See, e.g., Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99 (1984). Plaintiff has not alleged or argued that Morgan or Virginia have waived their immunity and no such waiver appears from the record.

Finally, Lloyd only seeks money damages against Morgan. From Ex parte Young, 209 U.S. 123, 159-60 (1908) and its progeny, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004). However, the Eleventh Amendment clearly bars the monetary relief Lloyd seeks. As this Court has explained, "while state officials literally are persons, they are not 'persons' for purposes of Section 1983 official capacity claims seeking monetary relief. This means that a Virginia Sheriff, as an arm of the State, is not subject to official capacity Section

1983 monetary liability." Vollette, 937 F. Supp. 2d at 730 n.7 (internal citations and quotation omitted); see also Goodmon v. Rockefeller, 947 F.2d 1186, 1187 (4th Cir. 1991) (per curiam) (applying Will to Eighth Amendment claims).

Because Lloyd only seeks money damages and no injunctive relief, see Complaint (ECF No. 1, at 7), she has failed to state an official capacity claim upon which relief can be granted. The Eleventh Amendment bars her claim. Accordingly, the undersigned recommends that Lloyd's official capacity claims against Morgan be dismissed.[4]

### 2. Lloyd's Individual Capacity Claims Against Morgan

In addition to her claims against Morgan in his official capacity, Lloyd alleges constitutional and tort claims against Morgan in his individual capacity. "Because a suit against an official in his individual capacity does not seek payment from the state treasury, but from the personal funds of the individual, and therefore is not a suit against the state or the state office that the individual occupies, the individual is not protected by the holding of Will" and Eleventh Amendment immunity. Goodmon, 947 F.2d at 1187. Lloyd argues that Morgan

---

[4] The Eleventh Amendment bar applies to both Lloyd's constitutional claims and her state law claims against Morgan in his official capacity. See Vollette, 937 F. Supp. 2d at 714 n.6 (citing Parks v. Piedmont Technical College, 76 F.3d 374 (table) (4th Cir. 1996) (unpublished); Huang v. Board of Governors of University of North Carolina, 902 F.2d 1134, 1138 (4th Cir. 1990)).

is individually liable in tort and for alleged constitutional violations committed by Jane Doe, through respondeat superior.

Morgan argues that Lloyd's constitutional claims, brought under § 1983, must be dismissed because they rely on respondeat superior liability, not Morgan's personal involvement in depriving Lloyd of her constitutional rights.   Morgan also argues that Lloyd's tort claims against him are time-barred and/or barred by Morgan's sovereign immunity.

### a. Section 1983 Claims

The Fourth Circuit has established that for claims brought pursuant to § 1983, "liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights. The doctrine of respondeat superior has no application under [] section [1983]." Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (internal citations omitted).   While liability cannot be premised on respondeat superior, in certain circumstances it can be premised "upon 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'"   Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (quoting Slakan v. Porter, 737 F.2d 368, 372-73 (4th Cir. 1984)).   Additionally, a Sheriff can be "liable under Section 1983 if [he] causes such a deprivation through an

official policy or custom." Francis v. Woody, No. 3:09cv325, 2009 WL 1442015, at *5-6 (E.D. Va. May 22, 2009) (quoting Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999)); see also Monell v. Dep't of Social Services, 436 U.S. 658, 690-691 (1978).

Accordingly, to establish liability for civil rights violations, Lloyd must show that Morgan "(1) personally violated a specific right under federal law; (2) implemented an official policy which resulted in a constitutional violation; or (3) tacitly authorized or demonstrated deliberate indifference to the unlawful conduct of subordinates." Scott v. City of Virginia Beach, No. 2:10cv625, 2011 WL 11004246, at *4 (E.D. Va. Sept. 29, 2011) (citations omitted). Under this well-established standard, Lloyd has failed to allege facts sufficient to support a claim for § 1983 liability against Morgan.

First, Lloyd has not alleged that Morgan was present on the steps of the Newport News Juvenile and Domestic Relations Court or at Riverside Hospital to personally violate her constitutional rights. And second, Lloyd has not alleged that Morgan established any policy or practice of the Newport News Sheriff's Department to walk a few steps behind escorted detainees like Lloyd or to cut short medical diagnoses, in violation of her constitutional rights.

As to the third avenue for liability, Lloyd has failed to sufficiently allege facts to support any claim that Morgan

"tacitly authorized" Jane Doe's conduct.  To do so, under Fourth Circuit precedent, she would have to plead facts to sustain three elements:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices,.; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.
>
> Shaw, 13 F.3d at 799 (citations omitted).

Specifically,

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Where, as here, a plaintiff merely alleges that an official was the supervisor of the allegedly unconstitutional actor, "that is insufficient as a matter of law to conclude that [the supervisor] violated [the plaintiff]'s Eighth Amendment rights."  Danser v. Stansberry, 772 F.3d 340, 349 (4th Cir. 2014) (citing Iqbal, 556 U.S. at 676) (holding that prisoner failed to state a Bivens claim based on his placement in recreation cage with a dangerous inmate).

Rather, a "supervisor may be held liable under a tacit authorization theory if that supervisor fails to take action in response to a known pattern of comparable conduct occurring before the incident at issue took place." Id. With that standard, "[t]he plaintiff assumes a heavy burden of proof in establishing deliberate indifference." Shaw, 13 F.3d at 799.

Here, aside from using the phrase "deliberate indifference" in the Complaint to describe Jane Doe's actions in the hospital, Lloyd has not alleged any facts supporting the three elements recited above. To plausibly allege a claim, Lloyd needed to allege some "subjective" intent on the part of Morgan to disregard a significant risk to Lloyd's right to be free from cruel and unusual punishment. See Farmer, 511 U.S. at 838-39. Lloyd's sole allegation that links Morgan, individually, to her fall on the courthouse steps or her hospital treatment is that he was Jane Doe's supervisor. See Complaint ¶ 2 (ECF No. 1, at 2) ("was responsible for the training, supervision, and administration of the Newport News Sheriff's Office); id. ¶ 10 (ECF No. 1, at 4) ("under the supervision and direction of Defendant Morgan"); id. ¶ 14 (ECF No. 1, at 5) ("under the principles of respondent [sic] superior"); id. ¶ 24 (ECF No. 1, at 6) (alleging, in conclusory fashion, that Morgan was "deliberately indifferent . . . of [his] responsibility to Plaintiff"). That link is insufficient to state a claim for

13

supervisory liability under § 1983, as a matter of law, either for the lack of assistance for Lloyd to descend the stairs or for Jane Doe's alleged neglect of Lloyd's medical treatment at Riverside Hospital.

To the extent that Lloyd alleges violations of her rights under provisions of the United States Constitution other than the Eighth Amendment, she fails to allege sufficient factual matter to make out a plausible claim for relief. Finally, to the extent that Lloyd alleges that Morgan deprived her of rights guaranteed to her by the Virginia Constitution, she fails to state a claim upon which relief can be granted for the same reasons. Her deficient allegations assert the same essential deprivation of rights – "cruel and unusual punishment, and/or the denial of due process of law" – secured by both the Virginia Constitution and the United States Constitution. See Complaint ¶ 21 (ECF No. 1, at 5); Va. Const. § 9 (cruel and unusual punishment); Va. Const. § 11 (due process). Cf. Complaint ¶ 4 (ECF No. 1, at 2).[5] Accordingly, the undersigned recommends that

---

[5] Moreover, it is particularly unclear whether 42 U.S.C. § 1983 provides a cause of action to remediate an alleged injury caused by a violation of a state constitution. See, e.g., Blessing v. Freestone, 520 U.S. 329, 340 (1997) ("In order to seek redress through § 1983, however, a plaintiff must assert the violation of a federal right, not merely a violation of federal law.") (emphasis omitted)); Corr v. Metro. Washington Airports Auth., 740 F.3d 295, 299 (4th Cir. 2014) ("[Appellants'] due process argument sounds like a state law claim dressed up in due process clothing.... Such suits are rarely favored, for the Fourteenth Amendment is not meant to be 'a font of tort law.'") (quoting Mora v. City Of Gaithersburg, 519 F.3d 216, 231 (4th

the Court GRANT Morgan's motion with respect to Lloyd's constitutional claims for money damages against Morgan in his individual capacity and those claims be DISMISSED.

### b. State Law Tort Claims[6]

#### i. The Statute of Limitations

Morgan next argues that all of Lloyd's tort claims against him are time-barred by Virginia Code § 8.01-243.2.[7] "Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious defense." Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir. 1996). The statute of limitations is "[o]ne such defense." Scales v. Markham, No. 7:13cv597, 2014 WL 4828812, at *2 (W.D. Va. Sept. 29, 2014)

---

Cir. 2008)). Indeed, Section 1983 provides "citizen[s] of the United States or other person[s] within the jurisdiction thereof" an avenue to pursue remedies for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." § 1983 (emphasis added). However, it is unnecessary to address this issue in light of other deficiencies in Lloyd's Complaint.

[6] Although in her Complaint, Lloyd only alleged jurisdiction pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over her state law claims as well because they are "so related to [her § 1983] claims . . . that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

[7] Morgan has raised the statute of limitations defense in support of his motion to dismiss solely with respect to Lloyd's tort claims. See Def.'s Br. (ECF No. 11, at 7); Fed. R. Civ. P. 8(c)(1) ("party must affirmatively state any avoidance or affirmative defense, including: . . . statute of limitations.").

(citing Brooks, 85 F.3d at 181; United States v. Kivanc, 714 F.3d 782, 789 (4th Cir. 2013) ("The statute of limitations is an affirmative defense that may be raised in a Rule 12(b)(6) motion to dismiss for failure to state a claim."). Similarly though, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). And, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Id.

Here, Morgan's argument raises two issues: whether the statute of limitations governing "person[s] confined in a state or local correctional facility" applies to Lloyd's tort claims, Va. Code Ann. § 8.01-243.2; and whether Lloyd's date of birth, asserted only in Morgan's brief in support of his motion to dismiss, constitutes a matter outside the pleadings such that the Court is required to convert Morgan's motion into one for summary judgment. Because the undersigned concludes that the limitations period in § 8.01-243.2 does not apply to Lloyd's claims, it is not necessary to resolve the second issue.[8]

---

[8] Although Lloyd's date of birth is relevant to determining when her limitations period began to run, see Va. Code Ann. § 8.01-229, Morgan has only raised as a defense the limitations period in § 8.01-243.2. Because Morgan only raised that limitations period, the Court need not calculate any other limitations period such that Lloyd's date of birth is not material to resolving Morgan's motion. However, the parties agree that any applicable limitations period was tolled until Lloyd

Virginia Code § 8.01-243.2 provides:

> No person confined in a state or local correctional facility shall bring or have brought on his behalf any personal action relating to the conditions of his confinement until all available administrative remedies are exhausted. Such action shall be brought by or on behalf of such person within one year after cause of action accrues or within six months after all administrative remedies are exhausted, whichever occurs later.

Va. Code Ann. § 8.01-243.2.[9]   This statute applies a one-year limitations period, in lieu of Virginia's residual two-year period for personal injury, see Va. Code Ann. § 8.01-243(A), when two elements are present.   For the statute to apply, "the plaintiff must have been confined at the time the cause of action accrued, and the cause of action must relate to plaintiff's conditions of confinement."   Bing v. Haywood, 722 S.E.2d 244, 246 (Va. 2012).   Moreover, "such person" must be confined in a state or local correctional facility at the time her cause of action accrues.   Lucas v. Woody, 756 S.E.2d 447, 450 (Va. 2014).   And under Virginia law, a cause of action

---

reached the age of majority, on July 5, 2013.   Id. § 8.01-229(A)(2)(a) ("If an infant becomes entitled to bring such action, the time during which he is within the age of minority shall not be counted as any part of the period within which the action must be brought . . . ."); And, Morgan, by counsel, conceded at the February 12, 2015 hearing that absent application of the prisoner limitations period in § 8.01-243.2, Lloyd's claims are timely.

[9] Here, because Lloyd was not in custody at the time of her filing, the parties have raised no issues with respect to exhaustion of administrative remedies.

accrues on the "date the injury is sustained." Va. Code Ann. §
8.01-230.

Here, taking Lloyd's allegations in the Complaint as true,
her cause of action accrued on August 19, 2011. At that time,
she was in the custody of the Sheriff's Office en route from the
Newport News Juvenile and Domestic Relations Court to the
Newport News "Juvenile Secure Detention" facility. Complaint ¶
8 (ECF No. 1, at 3). And, she was in handcuffs and shackles.
Id. Thus, she was "confined" in that she was in "the state of
being imprisoned or restrained." Bing, 722 S.E.2d at 247
(quoting Black's Law Dictionary 318 (9th ed. 2009)). However,
Lloyd's allegations do not establish that she was confined in "a
state or local correctional facility." Va. Code Ann. § 8.01-
243.2.

The Virginia Code defines a "state correctional facility"
as "any correctional center or correctional field unit used for
the incarceration of adult offenders established and operated by
the Department of Corrections, or operated under contract
pursuant to § 53.1-262." Va. Code Ann. § 53.1-1 (emphasis
added). The Virginia Code similarly defines a "local
correctional facility" as "any jail, jail farm or other place
used for the detention or incarceration of adult offenders,
excluding a lock-up, which is owned, maintained or operated by
any political subdivision or combination of political

18

subdivisions of the Commonwealth." _Id._ (emphasis added). Finally, the Virginia Code defines a "Secure facility" or "detention home" as "a local, regional or state public or private locked residential facility that has construction fixtures designed to prevent escape and to restrict the movement and activities of <u>children held in lawful custody</u>." Va. Code Ann. § 16.1-228 (emphasis added).

From the Virginia General Assembly's three distinct definitions, found in different Chapters of the Code, it is clear that the three facilities are in fact different and administered differently. "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." <u>Conn. Nat'l Bank v. Germain</u>, 503 U.S. 249, 253-54 (1992). Similarly, when "it is fair to suppose that [the legislature] considered the unnamed possibility and meant to say no to it," the <u>expressio</u> <u>unius</u> canon is applicable. <u>Marx v. Gen. Revenue Corp.</u>, 133 S. Ct. 1166, 1175 (2013) (quoting <u>Barnhart v. Peabody Coal Co.</u>, 537 U.S. 149, 168 (2003)). That is, the expression of one thing implies the exclusion of another. <u>See, e.g.</u>, <u>id.</u> While the canon is to be "applied with great caution," the context here suggests that it is highly useful in the discerning the General Assembly's intent. <u>Director, Office of Workers' Compensation Programs v. Bethlehem Mines Corp.</u>, 669 F.2d 187, 197 (4th Cir. 1982). The

specificity employed with the terms "state or local correctional facility" indicates a clear expression that "the items expressed are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence." Barnhart, 537 U.S. at 168 (quoting United States v. Vonn, 535 U.S. 55, 65 (2002)). The Virginia Code specifically defines both terms – state correctional facility and local correctional facility. See Va. Code Ann. § 53.1-1. The inclusion of statutorily defined terms justifies the inference that the failure to include juvenile detention centers was not due to inadvertence. Additionally, the General Assembly amended the provision in 1999 to add "or local" to the original language of the 1998 law that applied the limitations period only to "state correctional facilities." Compare 1998 Virginia Laws Ch. 596 (S.B. 648), with 1999 Virginia Laws Ch. 47 (H.B. 1522). Such an amendment evidences that the General Assembly was, at least, aware of the provision's application with respect to different facilities.

Morgan cites Alexander v. Boyd, 113 F.3d 1373, 1385 (4th Cir. 1997) in support of his argument that the one-year limitations period applies to Lloyd's action. It does not help him. In that case, the Court of Appeals for the Fourth Circuit addressed the statutory construction of the Prison Litigation Reform Act ("PLRA"). See 42 U.S.C. § 1997. Specifically, it

addressed whether "juveniles detained in [South Carolina]'s juvenile facilities are 'prisoners' confined to a 'jail, prison, or other correctional facility'" as those terms are used in the PLRA.[10]   113 F.3d at 1381.   Although the court concluded that they were, its holding has no import here, where the Court must construe Virginia Code § 8.01-243.2.   Unlike the federal act construed in Alexander, the Virginia Code specifically defines the terms used to identify the corrections facilities to which it applies.   See 113 F.3d at 1383 (noting that "Congress did not define 'jail, prison, or other correctional facility'" and relying on Webster's II New Riverside Dictionary and Black's Law Dictionary).   Cf. Va. Code Ann. § 53.1-1.   Unlike the federal act construed in Alexander, Virginia Code § 8.01-243.2 does not contain a catch-all term such as, "other correctional facility." Id.   And unlike Congress in the federal act construed in Alexander, the General Assembly did incorporate "language limiting the scope of these words [at issue] to adult facilities."   Id.; Va. Code Ann. § 53.1-1 ("used for the incarceration of adult offenders").   In short, the Fourth Circuit's conclusion with respect to the federal statute in

---

[10] The endpoint of such analysis was to conclude whether the PLRA's restrictions on awards of attorney's fees applied to the successful juveniles who challenged the lawfulness of their confinement conditions. See 113 F.3d at 1381.

Alexander is unhelpful to the interpretation of the Virginia statute here.

A court must construe a statute's term "so that it harmonizes with the other provisions of the [act]." Alexander, 113 F.3d at 1383. Similarly, the Supreme Court of Virginia has reiterated, while interpreting Virginia Code § 8.01-243.2, that "[i]f a statute is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute." Lucas, 756 S.E.2d at 449. Here, the language of the statute, read in conjunction with the other provisions of the Virginia Code, comports with the legislature's intent to apply this shorter limitations period to adults confined in state and local correctional facilities, not to juveniles confined in secure detention. Notably, the confinement of juveniles is governed by separate provisions of the Virginia Code. See, e.g., Va. Code Ann. § 16.1-284.1. Virginia law also physically separates juvenile and adult offenders. Subject to some exceptions, "[n]o juvenile shall be detained or confined in any jail or other facility for the detention of adult offenders or persons charged with crime." Va. Code Ann. § 16.1-249. Moreover, juveniles enjoy tolling protection to the age of majority which is in no way abrogated by the language of § 8.01-243.2.

From these abundant distinctions in the Virginia Code between juvenile facilities and adult correctional facilities, it is clear that the General Assembly chose its words in § 8.01-243.2 with care. The expressio unius canon reliably indicates that persons confined in secure juvenile detention centers are not subject to the limitations period in § 8.01-243.2. Therefore, Lloyd's tort claims, which accrued while she was in the custody of a secure juvenile detention center, are not time-barred by that statute of limitations. Accordingly, the undersigned recommends that the Court DENY Morgan's motion as to that ground.

### ii. Sovereign Immunity

Morgan finally argues that even if Lloyd's claims are not time-barred, the doctrine of sovereign immunity bars her claim of simple negligence against Morgan.[11] In response, Lloyd argues that where the doctrine applies, it "merely requires that Plaintiff prove gross negligence on the part of the state employee." Pl.'s Br. (ECF No. 17, at 1) (citing Colby v. Boyden, 400 S.E.2d 184 (Va. 1991)). Both parties are correct.

Morgan is a constitutional officer of Virginia.[12]   See Va.

---

[11] Morgan concedes that Virginia sovereign immunity only bars liability for simple negligence, not gross negligence. See Def.'s Br. (ECF No. 11, at 8-9).

[12] Virginia sheriffs are considered "constitutional officers" because they derive their authority directly from Virginia's Constitution. See Doud v. Commonwealth, 717 S.E.2d 124, 126 (Va. 2011); Va. Const.

Const. art. VII, § 4. Thus, he has a "close[] nexus to the sovereign," Messina v. Burden, 321 S.E.2d 657, 663 (Va. 1984), and is entitled to share in the Commonwealth's sovereign immunity from claims for simple negligence so long as his actions alleged to be negligent "involved the exercise of judgment and discretion." Heider v. Clemons, 400 S.E.2d 190, 191 (Va. 1991); see, e.g., Brown v. Mitchell, 327 F. Supp. 2d 615, 663 n.59 (E.D. Va. 2004) (citing Glasco v. Ballard, 452 S.E.2d 854, 856 (Va. 1995)).

To be considered discretionary and to make the application of sovereign immunity appropriate, "the facts of the case [must] comport with the four-part test enunciated in James v. Jane, 221 Va. 43, 282 S.E.2d 864 (1980)."[13] Heider, 400 S.E.2d at 191. The four factors to consider are: (1) the nature of the function performed; (2) the extent of the state's interest and involvement in the function; (3) the degree of control exercised by the state over the employee; and (4) whether the act complained of involved the use of judgment and discretion.

---

art. VII, § 4 (""There shall be elected by the qualified voters of each county and city a treasurer, a sheriff, an attorney for the Commonwealth, a clerk of the court . . . and a commissioner of the revenue ." ) (emphasis added).

[13] This standard applied to sheriffs and counties from the James v. Jane test is distinct from the "proprietary" or "governmental" function analysis applied to cities and municipalities. See Niese v. City of Alexandria, 564 S.E.2d 127, 132 (Va. 2002); Verry v. Barry, 71 Va. Cir. 318 (Fairfax Cir. Ct. July 27, 2006).

*Messina v. Burden*, 321 S.E.2d 657, 663 (Va. 1984). However, as the *James* court explicitly noted, "[a] state employee who acts wantonly, or in a culpable or grossly negligent manner, is not protected." *James v. Jane*, 282 S.E.2d 864, 869 (Va. 1980). Therefore, at a minimum, "if [Morgan]'s actions amounted to 'gross negligence,' []he is not immune from liability." *Brown v. Mitchell*, 327 F. Supp. 2d at 663 n.59 (citing *Colby*, 400 S.E.2d at 186).

Although she labeled only one numbered count in her Complaint, Lloyd has alleged both simple negligence, Complaint ¶ 10, and gross negligence, *id.* ¶¶ 19, 24, against Morgan. Lloyd appears to only allege such liability on the theory that Morgan is liable for the negligent conduct of his agents and employees. *Id.* ¶ 14. Lloyd does not specifically allege any acts or omissions by Morgan himself that would otherwise render him liable in tort, but she does at least allege that he "was responsible for the training, supervision and administration of the Newport News Sheriff's Office." *Id.* ¶ 2. Thus, this report will address both theories.

First, to the extent that Lloyd's complaint alleges that Morgan personally was negligent in his duties, Morgan's function as a sheriff, in overseeing the custody of inmates, was clearly discretionary and he is entitled to sovereign immunity from Lloyd's simple negligence claims in that regard. "[A]lthough

the state has a strong interest in making sure the jail is properly operated, the day to day decisions, including the hiring of employees and how to maintain a safe and secure jail, rest in the discretion of the Sheriff." _Verry v. Barry_, 71 Va. Cir. 318, 2006 WL 2578368, at *2 (Fairfax July 27, 2006) (citing _Small v. Jackson_, 4 Va. Cir. 262, 265 (Richmond 1985)); _Sickles v. Peed_, 25 Va. Cir. 487 (Fairfax 1991) ("[T]he failure to properly hire, train, and discipline the deputies for the alleged conduct is clearly a matter of judgment and discretion."); _Brown v. Mitchell_, 327 F. Supp. 2d 615, 646 (E.D. Va. 2004) (holding that Virginia sheriff was entitled to sovereign immunity for simple negligence stemming from alleged jail overcrowding).

Additionally, as a constitutional officer, Morgan is generally afforded such immunity based on his proximity to highest levels of state government. _See Hedrick v. Roberts_, 183 F. Supp. 2d 814, 824 (E.D. Va. 2001) (holding Hampton Sheriff immune); _Messina_, 321 S.E.2d at 661 ("There is very little debate regarding the extension of the doctrine to those who operate at the highest levels of the three branches of government."). His role as an elected official necessarily encompasses the exercise of judgment and discretion on a routine basis. The functions Morgan performs are tied directly to the Virginia Constitution. _See Messina_, 321 S.E.2d at 663 (listing

26

among the James factors "the nature of the function performed" and "the extent of the state's interest and involvement in the function"). Thus, in carrying out his duties, Morgan was "engaged in an essential governmental function." Glasco v. Ballard, 452 S.E.2d 854, 856 (Va. 1995) (holding deputy sheriff immune from simple negligence liability for accidental gun discharge striking a suspect). In addition, the Complaint alleges no factual matter to support a failure-to-train theory of tort liability.

Second, to the extent that Lloyd alleges that Morgan is vicariously liable for the negligent acts of his deputy Jane Doe, the duties that Jane Doe allegedly carried out negligently involve sufficient discretion and judgment, under James, to afford Morgan sovereign immunity from any respondeat superior liability for Jane Doe's simple negligence.

It has long been established in Virginia that a sheriff "shall answer civilly for all the acts of his deputy."[14] Verry v. Barry, 71 Va. Cir. 318 (2006) (citing James v. M'Cubbin, 6

_____

[14] Some courts, including this one, have called into question the continuing validity of this doctrine in other contexts. See, e.g., Harrison v. Prince William Cnty. Police Dep't, 650 F. Supp. 2d 688, 712-13 (E.D. Va. 2009) (holding that police chief was entitled to sovereign immunity for generally alleged supervisory liability). However, none directly address the respondeat superior liability of Virginia constitutional officers to warrant deviating from the Supreme Court of Virginia's existing, albeit old, case law. At bottom, what is clear is that sheriffs and their deputies are immune from liability when performing discretionary acts, as determined under the James factors. See Colby v. Borden, 400 S.E.2d 184, 186-87 (Va. 1991); Heider v. Clemons, 400 S.E.2d 190, 190-91 (Va. 1991).

Va. 273 (1800)); see Bell v. City of Roanoke Sheriff's Office, No. 7:09cv214, 2009 WL 5083459, at *5 (W.D. Va. Dec. 23, 2009) (concluding that Mosby infra's holding that the acts of the deputy, colore officii, are considered in law as the acts of the sheriff remains valid and controlling authority in Virginia); Mosby v. Mosby, 50 Va. (9 Gratt.) 584 (1853) ("[T]he sheriff [is] answerable . . . for the act of his officer, the law looking upon the sheriff and all his officers as one person."); Garrett v. Hutchinson, 86 Va. 872 (1890); Agyman v. Pierce, 26 Va. Cir. 140 (1991) ("Sheriff [] is liable for all torts committed by his deputies."). Notably, the Supreme Court of Virginia has also explicitly held that "the doctrine of respondeat superior applies to a clerk of court in the performance of the duties of his office." First Virginia Bank-Colonial v. Baker, 301 S.E.2d 8, 12-13 (Va. 1983). Like the sheriff, the clerk of court is a constitutional officer. See Va. Const. art. VII, § 4. Thus, the sovereign's immunity cloaks both officers in the same fashion. Hence, Virginia law maintains that public officials are immune from liability for their subordinates' discretionary decisions, but may not be immune from liability for their subordinates' performance of ministerial duties. See Hales v. City of Newport News, No. 4:11cv28, 2011 WL 4621182, at *6 n.12 (E.D. Va. Sept. 30, 2011).

Once again, the four James factors resolve whether sovereign immunity applies to Jane Doe's acts or omissions.

Those factors are: (1) the nature of the function performed; (2) the extent of the state's interest and involvement in the function; (3) the degree of control exercised by the state over the employee; and (4) whether the act complained of involved the use of judgment and discretion. Messina, 321 S.E.2d at 663. First, here, transporting detainees or prisoners to and from detention facilities and the courthouse is entirely governmental in nature. The Virginia Code requires "[t]he sheriff . . . [to] receive into the jail facility all persons committed by the order of such courts, or under process issuing therefrom," a traditional law enforcement function. Va. Code Ann. § 53.1-119. Second, the Commonwealth has a strong interest in seeing that sheriffs and their deputies supervise those in custody. See, e.g., id. § 53.1-118 (granting circuit courts power to fine a sheriff if he "has in any respect failed to perform his duties with respect to the operation of the jail"). Third, the state, through the citizenry, exercises significant control over the sheriff by way of popular election. See Va. Const. art. VII, § 4 ("There shall be elected by the qualified voters of each county and city a . . . sheriff . . . .").

29

Finally, how the sheriff carries out his constitutional and statutory duties involves the use of judgment and discretion. Specifically here, how the sheriff transports prisoners to and from the courthouse is within his discretion. See Va. Code Ann. § 53.1-116 et seq. (outlining the duties of sheriffs and omitting specific direction on transporting prisoners). While Virginia sheriffs' duties are prescribed by statute, the sheriff retains discretion in their implementation. See, e.g., Va. Code Ann. § 53.1-126 (requiring sheriff to purchase for jail inmates, among other things, such "medicine as may be necessary") (emphasis added).

Additionally, Virginia case law distinguishes between the discretion involved in deciding how an act is carried out and the ministerial nature of acts and omissions which are themselves the source of injury simply by their commission or failure to act. In Heider v. Clemons, for example, the court held that sovereign immunity was not available to the sheriff's deputy who was involved in a car accident while serving process. 400 S.E.2d 190, 191 (Va. 1991). The deputy collided with a motorcycle while attempting to merge back onto a road from the left-hand shoulder. Id. at 190. Because the circumstances presented an "ordinary driving situation[]" the accompanying duty of care was a ministerial obligation. Id. at 191. The duty of care Deputy Heider owed to other drivers was not unique

30

to his carrying out a governmental function. Rather, he owed a duty to exercise reasonable care merely as a driver on the roadway.

On the other hand, in Colby v. Boyden, the court held that a police officer's driving while in pursuit of a suspect "involve[d] necessarily discretionary, split-second decisions balancing grave personal risks, public safety concerns, and the need to achieve the governmental objective." 400 S.E.2d 184, 187 (Va. 1991). Sovereign immunity applied to the officer's actions because his decision-making involved in enforcing traffic laws – "a primary governmental function of a municipality" – was discretionary. Id.

In First Virginia Bank-Colonial, the court held that a deputy clerk's indexing a deed of trust on the wrong page of a grantor's index book was "misfeasance of a ministerial duty." 301 S.E.2d at 11. Importantly, the injury complained of resulted from the clerk's clear failure to properly record, an administrative task which was not subject to the clerk's discretion. As a result, sovereign immunity did not apply. Id.

Here, both Jane Doe's escorting Lloyd back to the detention center and her subsequent supervision of Lloyd while at Riverside Hospital were replete with decisions to be made based on judgment and discretion. Indeed, the initial decision to place Lloyd in handcuffs and shackles was a discretionary one

31

that would be informed by the deputies' past dealings with the juvenile detainee, among other factors.   The decision to transport Lloyd to Riverside, as opposed to simply receiving medical treatment at the juvenile detention center, was an on-the-scene exercise of judgment made at the time of the incident. Jane Doe's actions involved decision-making that aligns more closely with driving in vehicular pursuit than with the indexing of a deed of trust.   See Colby, 400 S.E.2d at 187; First Virginia Bank-Colonial, 301 S.E.2d at 11.   In addition, unlike the deputy in Heider who owed a general duty of care to other drivers, as an individual on the roadway apart from his governmental duties, the sheriff and his deputies jointly owe a duty of care to their detainees peculiar to their governmental functions as public officers.   See 400 S.E.2d at 191.   Taken together, Jane Doe's actions, as answered for by Morgan, involved the exercise of discretion and judgment sufficient to provide Morgan sovereign immunity for claims of simple negligence.

Thus, absent Lloyd showing that Morgan or his deputy's acts or omissions rose to the level of gross negligence, Morgan is protected from tort liability.   Therefore, the undersigned recommends that the Court GRANT Morgan's motion with respect to Lloyd's simple negligence claims and DISMISS these claims.

### iii. Gross Negligence

In his briefs, Morgan has not argued that Lloyd has failed to allege facts sufficient to plausibly state a claim for relief based on gross negligence. Indeed, Morgan, by counsel, acknowledged at the February 12, 2015 hearing that, looking at Lloyd's Complaint through the lens required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, Lloyd had alleged factual matter that "could conceivably support the claim" of gross negligence. Accordingly, and based on a review of the allegations contained in the Complaint, the undersigned recommends that the Court DENY Morgan's motion to dismiss with respect to Lloyd's gross negligence claim.

The court must "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). While the court is not obligated to accept a complaint's legal conclusions, it must construe the facts alleged in the light most favorable to the non-moving party. See Hales, 2011 WL 4621182, at *2.

In Virginia, "gross negligence is a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of

33

such other person.[15] <u>Cowan v. Hospice Support Care, Inc.</u>, 603
S.E.2d 916, 918 (Va. 2004). It "requires a degree of negligence
that would shock fair-minded persons, although demonstrating
something less than willful recklessness. <u>Id.</u> (citing <u>Koffman
v. Garnett</u>, 574 S.E.2d 258, 260 (Va. 2003)). Whether a
plaintiff has established gross negligence is a factual question
to be decided by a jury. <u>Chapman v. City of Virginia Beach</u>, 475
S.E.2d 798, 801 (Va. 1996).

Because gross negligence is a factual matter, the Complaint
must plead sufficient facts to show the cause of action's
"[f]acial plausibility." <u>Nemet Chevrolet, Ltd.</u>, 591 F.3d at
256. With no need for "detailed factual allegations," <u>Iqbal</u>,
129 S. Ct. at 1949-50, Lloyd must "plead sufficient facts to
allow a court, drawing on 'judicial experience and common
sense,' to infer 'more than the mere possibility of
misconduct.'" <u>Nemet Chevrolet, Ltd.</u>, 591 F.3d at 256 (quoting
<u>Iqbal</u>, 129 S. Ct. at 1950).

In light of this standard, Lloyd's Complaint alleges
sufficient factual matter to show that she may be entitled to
relief. Taken in the light most favorable to Lloyd, Morgan's
deputy Jane Doe cancelled medical testing for Lloyd, against her
doctor's advice and despite Lloyd's earlier loss of

---

[15] Virginia tort law recognizes three degrees or "levels of
negligence:" simple negligence, gross negligence, and willful and
wanton negligence. <u>Cowan</u>, 603 S.E.2d at 918-19.

consciousness, solely because "she had a dinner date." Compl. ¶¶ 9, 10 (ECF No. 1, at 4). And as counsel acknowledged at the hearing, if these facts prove true, a rational trier of fact could find that such behavior amounted to "an utter disregard of prudence that amounts to a complete neglect of the safety of such other person." <u>Cowan</u>, 603 S.E.2d at 918. Therefore, the undersigned recommends that the Court DENY Morgan's motion with respect to Lloyd's gross negligence claim against Morgan.

## III. RECOMMENDATIONS

For the foregoing reasons, the undersigned recommends that the Court GRANT IN PART and DENY IN PART Morgan's Motion to Dismiss and:

1. DISMISS all of Lloyd's claims against Morgan in his official capacity;

2. DISMISS Lloyd's claims under 42 U.S.C. § 1983 against Morgan in his individual capacity; and

3. DISMISS Lloyd's state law claims for simple negligence against Morgan in his individual capacity.

## IV. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of

mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).


_____/s/_____
Douglas E. Miller
United States Magistrate Judge
_____
DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

February 20, 2015